**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>RAYCHELLE IVORY,<br><br>                Defendant. | Case No. 2:15–cr–17–JAD–VCF<br><br>**REPORT & RECOMMENDATION**<br><br>MOTION TO SUPPRESS (#37) |

      This matter involves the United States' prosecution of Raychelle Ivory on one count for being a felon in possession of a firearm. *See* (Indict. #1). Before the court is Mr. Ivory's Motion to Suppress (#37). For the reasons stated below, Mr. Ivory's motion should be denied.

**BACKGROUND**

      On June 15, 2014, Las Vegas Metropolitan Police Officer James Jackson was issuing a traffic citation near the intersection of South Maryland Parkway and Desert East Inn Road. (Mins. Proceedings #49). Very loud music was emanating from a nearby white Chevrolet Malibu. (*Id*.) Its windows were very darkly tinted and one of the windows was rolled more than halfway down. (*Id*.) A passenger, Demareo Gordon, slept inside. (*Id*.); (Doc. #37 at 8:20). As Officer Jackson approached the vehicle to ask the occupant to lower the music, he observed "a very heavy odor of marijuana emitting from the vehicle." (Doc. #37-1 at 1); (Mins. Proceedings #49).

      After Mr. Gordon lowered the volume, Officer Jackson returned to his motorcycle to complete the traffic citation and wait for the driver of the Malibu to return to the car. (Mins. Proceedings #49). A minute or two later, Raychelle Ivory exited a nearby liquor store and entered the Malibu. (*Id*.) The car departed

1

and, after finishing the traffic stop, Officer Jackson followed it southbound along Maryland Parkway as he notified dispatch that he would be initiating another traffic stop. (*Id.*) At the same time, Officer Jackson requested backup. (*Id.*)

Officer Jackson stopped the Malibu in front of a smoke shop and notified dispatch that the car may contain narcotics. (*Id.*) Mr. Ivory immediately exited the driver's seat "in a hastily fashion" and rushed towards the smoke shop. (*Id.*) This raised Officer Jackson's suspicions and made him concerned that Mr. Ivory pose a physical threat. (*Id.*) Officer Jackson drew his weapon and ordered Mr. Ivory to stop. (*Id.*) At the same time, Mr. Gordon exited the car and swiftly approached Officer Jackson, who ordered Mr. Gordon to stop. (*Id.*)

The pair complied with Officer Jackson's orders and were placed in handcuffs near the rear of the Malibu. (*Id.*) Both produced identification cards, neither of which were driver's licenses. (*Id.*); (Doc. #37-1 at 1). Because neither suspect was licensed to drive a car and both were suspected of narcotics use, Officer Jackson placed both in custody and immediately Mirandized them. (*Id.*)

Officer Jackson stated that Mr. Ivory "had the right to remain silent, that anything he – uh – said could and will be used against him in a court of law; if he cannot afford an attorney, one will be appointed before questioning." (*Id.*) Officer Jackson then told Mr. Ivory that he has a right to have an attorney with him when he is questioned and asked him and the passenger "whether they understood their rights and if they were willing to answer questions." (*Id.*) Both acknowledged that they understood their rights. (*Id.*)

Because the smell of marijuana continued to emanate from the car and Mr. Ivory, a K-9 unit was called. (*Id.*); *see also* (Doc. #37-1 at 1) (stating that both occupants "were acting very suspicious, nervous, and were non-compliant and agitated"). Officer Jackson asked Mr. Ivory whether he had been arrested before and Mr. Ivory said that he had been previously incarcerated for nineteen months for resisting a public officer with a firearm. (Mins. Proceedings #49).

Officer Roberto Angulo and the K-9 unit—Officer Horn and Lovie the dog—soon appeared. (*Id.*) Mr. Ivory then spontaneously stated, "I'm going to keep it real. There's a gun in the car under the driver's seat." (*Id.*) Officer Horn searched the car and discovered a loaded Glock 17 semi-automatic 9mm handgun. (*Id.*) Then Mr. Gordon confessed, "I have something to tell you." (*Id.*) Officer Horn continued searching the car and discovered a Ruger .357 magnum revolver. (*Id.*) "I'm not gonna lie. That gun is mine," Mr. Gordon said. (*Id.*) Both suspects stated that they bought their weapons from "someone off the streets." (*Id.*)

A records check confirmed that Ivory had a criminal history and revealed that both weapons were stolen. (*Id.*) Mr. Ivory and Mr. Gordon were arrested; the car was impounded; and Mr. Ivory was indicted on one court for being a felon in possession of a firm arm. (*Id.*); (Indict. #1). He now moves to suppress all real and testimonial evidence that was obtained during the stop and search.

## DISCUSSION

Mr. Ivory's motion to suppress should be denied because Officer Jackson complied with the Fourth and Fifth Amendments at each stage of his investigation.

First, the Fourth Amendment was not violated when Officer Jackson approached the Malibu in the parking lot to ask Mr. Gordon to turn the music down. It is well settled that a police officer may approach a person in public to ask questions without implicating the Fourth Amendment. *Florida v. Bostick*, 501 U.S. 429, 435 (1991). Mr. Ivory concedes this point. *See* (Doc. #37 at 5:25).

Second, Officer Jackson did not violate the Fourth Amendment when he noticed the smell of marijuana emanate from the car as he stood in the parking lot. The Fourth Amendment is not implicated when a police officer uses his or her "ordinary senses while standing in a place where the officer had a right to be standing" to detect contraband, like marijuana. *See United States v. Martinez-Miramontes*, 494 F.2d 808, 810 (9th Cir. 1974).

3

Mr. Ivory contends that Officer Jackson "could not have smelled marijuana [unless] he unconstitutionally entered the Malibu." (Doc. #37 at 6:9). The court disagrees. Both Officer Jackson's police report and the evidence that was submitted during the court's evidentiary hearing demonstrate that the smell of marijuana was heavy enough to be noticed from the parking lot. *See* (Doc. #37-1 at 1); (Mins. Proceedings #49).

Third, Officer Jackson did not violate the Fourth Amendment when he stopped the Malibu in front of the liquor store. A police officer may initiate a traffic stop if the officer has "reasonable suspicion" or "probable cause to believe that a traffic violation has occurred." *United States v. King*, 244 F.3d 736, 737 (9th Cir. 2001); *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Reasonable suspicion "requires specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that a particular person" violated a traffic law. *United States v. Twilley*, 222 F.3d 1092, 1095 (9th Cir. 2000) (citation omitted).

Here, Officer Jackson had probable cause to stop the Malibu because the smell of marijuana emanated from the car and there was reason to believe that the driver may have been operating a vehicle under the influence of marijuana. Additionally, Officer Jackson had probable cause to stop the car because the windows' tint appeared to violate Nevada's statute regarding window tint. *See* NEV. REV. STAT. § 484D.440 (West 2014).

During the court's hearing, Mr. Ivory offered testimony to show that the windows were not, in fact, illegal under the governing statute. This is irrelevant. Probable cause is not concerned with certainties but probabilities. *See Illinois v. Gates*, 462 U.S. 213, 238–39 (1983). Whether something is in fact illegal is an issue for the trier of fact at trial. Investigation is governed by the probable-cause standard, which is considerably lower. It permits a police officer to make a reasonable but mistaken judgment regarding the

facts that create probable cause without violating the Fourth Amendment. *See Saucier v. Katz*, 533 U.S. 194, 206 (2001).

Fourth, Officer Jackson did not violate the Fourth Amendment when he took Mr. Ivory into custody. A police officer may detain a person if the officer reasonably fears that the person presents a physical threat or is a risk of flight that may impede the officer's investigation. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (citations omitted). Here, Officer Jackson testified that he feared for his physical safety because both suspects were acting suspiciously, were likely on drugs, and immediately exited the car in a hurried manner after it was stopped. Under the totality of the circumstances, the court finds that the detention was reasonable. The court is unpersuaded by Mr. Ivory's argument that he was unlawfully arrested.[1]

Mr. Ivory contends that his Fourth Amendment rights were violated because Officer Jackson drew his weapon, pointed it at him, and yelled "stop motherfucker." (Mins. Proceedings #49). The court did not find Mr. Ivory's testimony credible and does not find that these actions, even if true, violated the Fourth Amendment. Officer Jackson had reason to believe that both suspects were on narcotics and may pose a physical threat. Officer Jackson testified that he was concerned for his physical safety particularly because he was outnumbered and on a motorcycle, which provided "minimal cover." (*Id.*)

Fifth, the court finds that the Metro Officers complied with their obligations under the Fifth Amendment. As soon as Mr. Ivory was detained, Officer Jackson testified that he Mirandized both suspects. Specifically, Officer Jackson stated that Mr. Ivory "had the right to remain silent, that anything

---

[1] However, even if Mr. Ivory were unlawfully arrested, the court would not recommend suppression because Officer Jackson had two bases to conduct a warrantless search of the Malibu. First, the overwhelming smell of marijuana gave Officer Jackson probable cause to believe that the car contained contraband and was being operated in violation of Nevada's traffic laws. Second, Mr. Ivory's mirandized statements that he was a felon and had a gun in the car gave Officer Jackson probable cause to believe that Mr. Ivory was a felon in possession of a firearm.

he – uh – said could and will be used against him in a court of law; if he cannot afford an attorney, one will be appointed before questioning." (*Id.*) Officer Jackson then told Mr. Ivory that he has a right to have an attorney with him when he is questioned and asked him and the passenger "whether they understood their rights and if they were willing to answer questions." (*Id.*) Both acknowledged that they understood their rights. (*Id.*) Soon thereafter, Mr. Ivory and Mr. Gordon spontaneously incriminated themselves by stating that guns were in the car.

Therefore, Mr. Ivory's motion to suppress should be denied. When Officer Jackson initially smelled marijuana emanating from the vehicle in the parking lot, he had probable cause to search it for evidence of marijuana. Additionally, when Mr. Ivory was detained, he provided Officer Jackson with facts tending to demonstrate that Mr. Ivory was a felon in possession of a firearm. Mr. Ivory stated that he had been incarcerated for nineteenth months for arresting an officer with a firearm and that he had a firearm in the car. These facts permitted Meto to search the car. *See Carroll v. United States*, 267 U.S. 132, 153 (1925).

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Mr. Ivory's Motion to Suppress (#37) be DENIED.

IT IS SO RECOMMENDED.

DATED this 17th day of September, 2015.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE