UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff<br><br>v.<br><br>Raychelle Ivory,<br><br>        Defendant | 2:15-cr-00017-JAD-VCF<br><br>**Order Overruling Objections, Adopting Report and Recommendation, and Denying Defendant's Motion to Suppress**<br><br>[ECF 37, 54] |

Raychelle Ivory stands charged with one count of being a felon in possession of a firearm.[1] Ivory moves to suppress the Glock pistol that was recovered from the car he was driving during a June 2014 traffic stop and his statement claiming the gun.[2] He argues that police stopped and searched him without the requisite level of suspicion and interrogated him without Mirandizing him.[3] Following an evidentiary hearing, Magistrate Judge Cam Ferenbach issued a report recommending that I deny Ivory's motion. Ivory objects. Having reviewed the objected-to portions of Judge Ferenbach's findings and conclusions *de novo*, I overrule Ivory's objections, adopt Judge Ferenbach's findings and conclusions, and deny Ivory's motion to suppress.

**Background**

**A.    The stop and search of Ivory and his vehicle**

In the early evening of June 15, 2014, Las Vegas Metropolitan Police (Metro) Officer James Jackson was issuing a traffic citation near the intersection of South Maryland Parkway and Desert Inn Road in Las Vegas, Nevada, when he noticed loud music coming from a Chevy Malibu with dark-tinted windows. The Malibu was parked in a nearby liquor store parking lot, approximately 50-

---

[1] ECF 1.

[2] ECF 61.

[3] ECF 37 at 2.

75 feet away.⁴ When Officer Jackson approached the car to tell the driver to turn the music down, he noticed the driver's-side window was rolled approximately halfway down.⁵ The driver's seat was empty. A passenger, Damareo Gordon, sat in the passenger's seat. Officer Jackson testified that when he walked up to the car he noticed "an overwhelming odor of burnt marijuana."⁶ He made eye contact with the passenger and then returned to his motorcycle to finish issuing the citation to the car he had already stopped.⁷

A few minutes later, Ivory exited the liquor store, got into the driver's seat of the Malibu, and backed out of the liquor store parking lot.⁸ Officer Jackson concluded the traffic stop that he was working on and followed the Malibu on his motorcycle.⁹ As soon as Officer Jackson got behind the Malibu, and before he had a chance to activate his patrol lights, the Malibu turned into a shopping center and parked in front of a smoke shop. Officer Jackson followed the Malibu into the parking lot, radioed dispatch that he was making a car stop on a potential narcotics vehicle, and called for a tow truck and backup.¹⁰

As Officer Jackson pulled up to the rear of the Malibu on his motorcycle, Ivory exited and began to "hastily" walk toward the smoke shop.¹¹ Officer Jackson got off his motorcycle and ordered him to stop. Ivory continued toward the shop, and Officer Jackson drew his weapon¹² and again ordered Ivory to stop. This time, Ivory stopped and turned around to face Officer Jackson, at

---

⁴ *Id.* at 7.

⁵ *Id.*

⁶ *Id.*

⁷ *Id.* at 8.

⁸ *Id.* at 9.

⁹ *Id.*

¹⁰ *Id.* at 10, 96.

¹¹ *Id.* at 11.

¹² *Id.* at 52.

which point Officer Jackson instructed him to put his hands on top of his head and walk towards him.[13] Ivory complied and was immediately placed in handcuffs. Gordon was also handcuffed.[14] Officer Jackson asked both men for identification; they both produced I.D. cards, neither had a driver's license.[15] Officer Jackson then Mirandized both men because he believed there were narcotics in the vehicle.[16] He asked Ivory if he had ever been incarcerated, and Ivory replied that he had recently served time in prison for resisting a public officer with a firearm.[17] Officer Jackson testified that he believed Ivory was high because his "eyes were glassy, watery, bloodshot. He seemed like slow, sluggish, and mellow, like he was kind of carefree, relaxed."[18]

Approximately six minutes after the men were handcuffed, the back-up officer, Officer Angulo, arrived,[19] followed closely by the K-9 unit. Officer Angulo testified that, when he arrived, Ivory and Gordon were handcuffed outside of the vehicle and that the vehicle doors were open.[20] Officer Angulo further testified that when he walked by the Malibu he noticed "[a] very strong odor . . . [of] smoked or burnt marijuana."[21] He also noticed a strong scent of marijuana coming from Ivory's person and stated that Ivory appeared to be high.[22] Officer Angulo stood with Gordon and Ivory while Officer Jackson spoke with the K-9 officer. Just as the K-9 unit was getting ready to sniff the vehicle, Ivory volunteered to Officer Angulo that he wanted to be honest and stated that

---

[13] *Id.* at 53.

[14] *Id.* at 54.

[15] *Id.* at 14.

[16] *Id.*

[17] *Id.* at 17.

[18] *Id.* at 22.

[19] *Id.* at 59.

[20] *Id.* at 78.

[21] *Id.* at 79.

[22] *Id.* at 80, 100.

there was a gun in the car underneath the driver's seat.[23] Gordon then admitted that there was another gun in the Malibu underneath the passenger's seat.[24] The K-9 unit quickly located both guns.[25] The vehicle was ultimately towed and impounded; Gordon and Ivory were transported to Clark County Detention Center and booked.[26] Shortly before being transported to CCDC, Ivory told Officer Angulo that he had marijuana hidden in his underwear and allowed Officer Angulo to retrieve it.[27] The entire encounter lasted approximately 40 minutes.[28]

**B.    Jude Ferenbach's report and recommendation**

After an evidentiary hearing,[29] Judge Ferenbach concluded that the Fourth Amendment was not violated when Officer Jackson approached the Malibu in the liquor store parking lot and smelled marijuana emanating from it. He also concluded that Officer Jackson had probable cause to stop the Malibu in front of the smoke shop both because (1) he smelled a strong scent of marijuana coming from the car, so he had reason to believe that the driver may have been operating a vehicle under the influence of marijuana, and (2) the windows' tint appeared to violate Nevada's statutory limits on window tint.[30] Judge Ferenbach further concluded that Officer Jackson did not violate the Fourth Amendment when he took Ivory into custody because "[a] police officer may detain a person if the officer reasonably fears that the person presents a physical threat or is a risk of flight that may impede the officer's investigation."[31] Judge Ferenbach noted that, even if Ivory were unlawfully

---

[23] *Id.* at 20.

[24] *Id.*

[25] *Id.* at 21.

[26] *Id.* at 23.

[27] *Id.* at 82.

[28] ECF 50 at 2.

[29] ECF 49 (minutes); 52 (transcript).

[30] ECF 54 at 4.

[31] *Id.* at 5 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

1  arrested, the Fourth Amendment does not require suppression because Officer Jackson had probable
2  cause at the time the Malibu was searched based on the overwhelming smell of marijuana coming
3  from the car and Ivory's statements that he was a felon and that he had a gun in the car.  Finally,
4  Judge Ferenbach found that suppression of Ivory's statements is not warranted because Officer
5  Jackson properly Mirandized Ivory before he spontaneously incriminated himself.[32]

### C.   Ivory's objections

Ivory argues that Judge Ferenbach improperly credited Officer Jackson's testimony that he smelled marijuana coming from the vehicle while Ivory was inside the liquor store.[33] Ivory further argues that he was illegally arrested outside of the smoke shop when Officer Jackson ordered him to stop with his weapon drawn and handcuffed him.[34] He contends that Jackson had no information at that time that justified this use of force.[35] Even if the initial seizure can be justified as an investigatory stop, Ivory argues that Officer Jackson lacked reasonable suspicion to stop him because the window tint was legal and because all Jackson knew was that a passenger in the car driven by Ivory smelled like marijuana—he did not know if Ivory himself smelled like marijuana, or if the passenger had a medical marijuana card.[36] According to Ivory, "[t]he legalization of medical marijuana in Nevada negates a finding of probable cause based solely on the smell of marijuana."[37] And because Officer Jackson lacked "information linking the smell of marijuana to the driver of the vehicle, there was no probable cause to search the vehicle for evidence of driving under the influence of marijuana."[38]

---

[32] *Id.* at 6.

[33] *Id.*

[34] *Id.* at 11.

[35] *Id.* at 12.

[36] *Id.* at 14.

[37] *Id.* at 17.

[38] *Id.* at 17–18.

## Discussion

### A. Standards of review

A district court reviews objections to a magistrate judge's proposed findings and recommendations *de novo*.[39] "The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."[40] The standard of review applied to the unobjected-to portions of the report and recommendation is left to the district judge's discretion.[41] Local Rule IB 3-2(b) requires *de novo* consideration of specific objections only.[42]

### B. Stops and searches under the Fourth Amendment

A police officer may conduct an investigatory stop if he has "a reasonable suspicion supported by articulable facts that criminal activity may be afoot."[43] Nervous, evasive behavior is a pertinent factor in determining reasonable suspicion.[44] A police officer may also search a car without a warrant if the officer has probable cause to believe that the car contains contraband or evidence of a crime.[45] Probable cause exists if, based on the totality of the circumstances known to the officers at the time of the search, there is a "fair probability that contraband or evidence of a crime will be

---

[39] *Id.*

[40] *Id.*

[41] *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121–22 (9th Cir. 2003) (a "district judge must review the magistrate judge's findings and recommendations *de novo if objection is made*, but not otherwise.") (emphasis in original).

[42] *See* Nevada L.R. IB 3-2(b) (requiring *de novo* consideration of specific objections only); *Carillo v. Cate,* 2009 WL 2575888, at *1 (S.D. Cal. Aug. 17, 2009) (noting that "generalized objections" do not require *de novo* review).

[43] *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal citation and quotation omitted).

[44] *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (citing *United States v. Brignoni Ponce*, 422 U.S. 873, 95 (1975); *Florida v. Rodriguez*, 469 U.S. 1, 6 (1984) (per curiam).

[45] *Carroll v. United States*, 267 U.S. 132, 153 (1925).

found in a particular place."[46]

### C. Suppression is not warranted because Jackson had reasonable suspicion to stop Ivory and probable cause to search the Malibu.

Given the strong smell of marijuana coming from the Malibu, the apparently illegally tinted windows, and Ivory's evasive behavior, Officer Jackson had reasonable suspicion to stop him. I give deference to Judge Ferenbach's determination that Officer Jackson's testimony that he smelled marijuana coming from the Malibu when it was parked in front of the liquor store is credible. Officer Angulo also testified that he smelled burnt marijuana coming from the vehicle,[47] and Judge Ferenbach found Ivory's testimony to the contrary to be incredible.[48] Additionally, marijuana was eventually recovered from Ivory's person.[49] Having reviewed the transcript of the evidentiary hearing, I see no reason to disturb Judge Ferenbach's credibility findings. The magistrate judge, having observed the witnesses and their demeanor, is in the best position to make these determinations.

Though it's a close call, the amount of force used by Officer Jackson to effectuate the stop did not transform an otherwise lawful stop into an unlawful arrest. Officer Jackson testified that he was concerned for his safety because he was dealing with two people whom he believed to be under the influence of narcotics; Ivory was initially noncompliant; and he was outnumbered and on a motorcycle, which offers almost no cover.[50] As Judge Ferenbach pointed out, "[a] police officer may detain a person if the officer reasonably fears that the person presents a physical threat or is a risk of flight that may impede the officer's investigation."[51]

Once Officer Jackson handcuffed Ivory, he noticed that Ivory smelled like, and appeared to

---

[46] *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

[47] ECF 37 at 79.

[48] ECF 54 at 4.

[49] ECF 37 at 82.

[50] *Id.* at 13.

[51] ECF 54 at 5 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

be under the influence of, marijuana.[52] He also learned that Ivory was driving without a valid driver's license[53] and had a prior conviction for resisting a police officer with a firearm.[54] Rather than dispel Jackson's initial suspicions that criminal activity was afoot, these additional facts gave him further reason to investigate and justified Ivory's continued detention for the duration of that investigation, which ultimately lasted only about 40 minutes.[55]

     Because Ivory appeared intoxicated and smelled like marijuana, and the Malibu smelled like burnt marijuana, Jackson had reason to believe that there was a fair probability that evidence of the offense of driving under the influence of a controlled substance (which is a crime regardless of whether a suspect has a medical marijuana card)—like a pipe or marijuana—would be found in the car. Jackson also had probable cause to search the Malibu based on Ivory's spontaneous statement—made after he was Mirandized—that there was a gun underneath the driver's seat. This statement, combined with Ivory's earlier admission that he was a convicted felon, gave the officers reason to believe that there was a fair probability that evidence of the offense of being a felon in possession of a firearm, the crime that Ivory stands charged with, would also be found in the Malibu. Because the police had reasonable suspicion to stop Ivory and probable cause to search the Malibu, suppression of the gun is not warranted. Finally, Ivory's statement claiming ownership of the gun is admissible both because he was Mirandized before making it and because he made the statement spontaneously and not in response to police questioning.

---

[52] ECF 37 at 22.

[53] *Id.* at 14.

[54] *Id.* at 17.

[55] ECF 50 at 2.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that defendant's objections to the magistrate judge's report and recommendation **[ECF 61]** are **OVERRULED**; the magistrate Judge's Report and Recommendation **[ECF 54]** is **ADOPTED**; and defendant's motion to suppress **[ECF 37]** is **DENIED.**

Dated December 22, 2015

_____
Jennifer A. Dorsey
United States District Judge